IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAI`I

GERALDINE KAJITANI, ET AL.,    )      CIVIL NO. 07-00398 SOM-LEK
                              )
          Plaintiffs,         )
      vs.                     )
                              )
DOWNEY SAVINGS & LOAN         )
ASSOCIATION,                  )
                              )
          Defendant.          )
_____ )


**ORDER GRANTING DEFENDANT'S MOTION FOR
RELIEF FROM THE ENTRY OF DEFAULT FILED AUGUST 21, 2007**

On September 7, 2007, Defendant Downey Savings and Loan
Association, F.A. ("Defendant") filed its Motion for Relief from
the Entry of Default Filed August 21, 2007 ("Motion").
Plaintiffs Geraldine I. Kajitani, individually and as trustee of
the Geraldine I. Kajitani Revocable Trust, and Arnold K.
Kajitani, individually and as trustee of the Arnold K. Kajitani
Revocable Trust (collectively "Plaintiffs") filed their
memorandum in opposition on September 27, 2007, and Defendant
filed its reply on October 5, 2007.  This matter came on for
hearing on October 18, 2007.  Appearing on Defendant's behalf was
Theodore Young, Esq., and appearing on Plaintiffs' behalf was
John Harris Paer, Esq.  After careful consideration of the
Motion, supporting and opposing memoranda, and the arguments of
counsel, Defendant's Motion is HEREBY GRANTED for the reasons set
forth below.

## BACKGROUND

Plaintiffs had a 5.25% fixed rate mortgage at First Hawaiian Bank before they refinanced their mortgage with Defendant.[1]  The closing took place on or about September 15, 2006.  According to Plaintiffs, they were promised an interest rate of 1.00% for five years.  That rate, however, turned out to be a one-month teaser rate.  The mortgage is an adjustable rate mortgage ("ARM") with rates ranging from 7.98% to 10.95% and a 8.083% average annual rate.  Plaintiffs also allege that the mortgage brokers were dual agents and some were unlicensed.  Further, Plaintiffs did not receive any documents at the closing.  Plaintiffs received some documents, including the Truth-in-Lending Disclosure Statement, in the mail after the closing.

On July 2, 2007, Plaintiffs' counsel wrote to Defendant's legal department and demanded rescission of the loan based on violations of the federal Truth-in-Lending Act ("TILA") and Hawai`i Revised Statutes § 480-2.  On July 23, 2007, Defendant's legal department sent Plaintiffs' counsel a letter requesting further evidence that Defendant violated the TILA.  Plaintiffs' counsel and Defendant's in-house counsel spoke on the telephone on or about August 2, 2007.  On August 6, 2007, Plaintiffs' counsel sent Defendant's in-house counsel an e-mail

---

[1] Defendant is a federally-chartered savings and loan association with its principal place of business in California.

2

("August 6 E-mail") with a settlement proposal, which Defendant
rejected in an August 14, 2007 e-mail.

Plaintiffs filed the complaint in the instant action on
July 26, 2007.  The complaint alleges violations of the TILA,
violations of Hawai`i Revised Statutes Chapter 480, and common
law fraud.  Plaintiffs mailed the summons and complaint to
Defendant via certified mail, return receipt requested.
Defendant received the complaint on July 30, 2007.  After
Defendant failed to answer, Plaintiff obtained an entry of
default on August 21, 2007.

In the instant Motion, Defendant points out that,
during the same period in which Plaintiffs filed the complaint,
Plaintiffs' counsel was engaging in settlement negotiations with
Defendant's in-house counsel.  According to Defendant,
Plaintiffs' counsel never mentioned the filing of the complaint
during their negotiations.  Further, when Plaintiffs sent the
complaint and summons to Defendant, it was addressed to
Defendant's "President" rather than to the legal department.
Defendant states that the corporate office did not forward the
complaint to the legal department until August 16, 2007.
Although Defendant has procedures in place to ensure that any
legal pleadings received at any of its offices are forwarded
immediately to the legal department, those procedures were not
followed in this case.

3

After the legal department received Plaintiffs'
complaint, a paralegal initially calendared August 20, 2007 as
the answer deadline, but she believed that Plaintiffs had not
effected proper service of the complaint under California law.
Defendant points out that, prior to this case, it had never had a
claim filed against it in Hawai`i.  Defendant began looking for
counsel in Hawai`i and, during this process, it received
inaccurate advice from outside counsel that service of a
complaint via certified mail, return receipt requested, was
ineffective.  On or about August 27, 2007, Defendant realized
that the service was probably effective and that it had to answer
the complaint.  Upon learning that Plaintiffs had already
obtained an entry of default, Defendant's Hawai`i counsel
promptly contacted Plaintiffs' counsel and requested that
Plaintiffs stipulate to set it aside.  Plaintiffs refused.

Defendant argues that there is good cause to set aside
the entry of default because: Plaintiffs will not be prejudiced;
Defendant has meritorious defenses; and the default was the
result of excusable neglect and was not wilful.  Defendant
contends that the complaint does not allege any time sensitive
claims and no time sensitive evidence is involved in this case.
Defendant asserts that it has meritorious defenses to Plaintiffs'
claims under the TILA and Chapter 480 because it made the
required disclosures in their loan documents.  Defendant further

4

asserts that Plaintiffs received copies of the relevant documents at closing.  In support of these claims, Defendant submitted a declaration by Denise Moeller, Defendant's Senior Vice President and Director of Lending Operations.  Defendant also submitted copies of Plaintiffs' loan documents.  [Exhs. 5-7 to Motion.] Defendant contends that the loan documents contradict Plaintiffs' claim that they were promised a rate of 1.00% for five years. Defendant also points out that Plaintiffs' fraud claim is defective as a matter of law because they did not plead with particularity.  Plaintiffs do not identify the specific content of the allegedly fraudulent misrepresentations, nor do they state who made them, when they were made, or how they were made.

Defendant next argues that the default was the result of excusable neglect.  Defendant argues that its failure to answer was excusable because Plaintiffs' counsel did not inform Defendant's legal department of the complaint during their settlement negotiations and Plaintiffs sent the complaint and summons to Defendant's President rather than to the legal department.  This was exacerbated by the fact that the corporate office did not immediately forward the complaint to the legal department.  Defendant, however, contends that this internal delay was not wilful or culpable.  Defendant acknowledges that counsel mistakenly believed that the service of the complaint was invalid, but they argue that this misapprehension of the law can

constitute excusable neglect.

Finally, Defendant argues that it brought the instant Motion within a reasonable amount of time after learning of the entry of default.

In their memorandum in opposition, Plaintiffs emphasize that the three factors of prejudice, meritorious defense, or culpable conduct are disjunctive; if any one of them are present, the Court can deny relief from the entry of default.  Plaintiffs stress that Defendant admits that it received the complaint on July 30, 2007 and failed to respond.  Plaintiffs argue that this constitutes culpable conduct under Ninth Circuit case law.  They apparently argue that Defendant should have been aware of the complaint because Defendant received Plaintiffs' rescission letter and because the August 6 E-mail specifically referred to the complaint in this case.

Plaintiffs argue that Defendant has not shown that it has meritorious defenses; it has only made bare assertions and unsubstantiated legal conclusions that it made the proper disclosures during the loan process.  Plaintiffs contend that Defendant has provided no evidence that it complied with the TILA.  Denise Moeller was not at their closing and Defendant did not submit an affidavit or declaration from a loan officer who saw Plaintiffs receive the documents at the closing.  Plaintiffs do not dispute that they signed the documents; they argue that

6

they were not provided copies at the closing.  Further, Defendant did not provide any defense to the unfair and deceptive trade practices claim that Defendant performed a "bait and switch" with the 1.00% teaser rate, nor does it offer any explanation how it could have allowed Plaintiffs to refinance their 5.25% fixed rate loan with an ARM.  Plaintiffs note that in a few years the monthly payment on their loan triples from $1,289.76 to $3,673.21, which they will not be able to pay.  Plaintiffs argue this is unconscionable and Defendant has offered no evidence to refute this, nor have they provided any evidence against the claim that some of the mortgage brokers were unlicensed.

Finally, Plaintiffs argue that, if the Court is inclined to grant the Motion, the Court should condition relief upon Defendant's payment of the attorney's fees that they incurred as a result of the default.

In its reply, Defendant argues that it has established a meritorious defense, with specific facts and supporting evidence, to all of Plaintiffs' claims.  Defendant argues that the loan documents it submitted with the Motion constitute a defense to Plaintiffs' claim that they did not receive copies at closing.  Each document states that, by their signature, Plaintiffs acknowledge receipt of copies of the document. Defendant contends that it need not provide a declaration from a loan officer who was present at the closing because the documents

7

create a rebuttable presumption that Defendant made the required discloses.

As to the Chapter 480 claim, Defendant reiterates its argument that the loan documents clearly establish what the interest rate was.  This is a defense to Plaintiffs' "bait and switch" claim.  Defendant points out that Plaintiffs' claim that Defendant should not have allowed them to refinance their prior mortgage is not actionable because Defendant was not in a fiduciary relationship with Plaintiffs and therefore was not required to advise Plaintiffs regarding which loan was more favorable to them.  Defendant also argues that the presence of unlicensed brokers does not void the loan.  Further, Plaintiffs, not Defendant, retained the allegedly unlicensed brokers.

As to the fraud claim, Defendant argues that, even if it is properly pled, Defendant has established that it did not make any false representations.  Even assuming, *arguendo*, that Defendant did make a false representation, Plaintiffs' reliance on it was unreasonable.

Defendant argues that the mere fact that it received the complaint and failed to answer does not render its conduct culpable.  It did not choose to disregard the procedural rules; their failure to answer was due to the delay in forwarding the complaint to the legal department and erroneous advice about whether service was effective.  Defendant reiterates that

8

Plaintiffs bear some responsibility for the legal department's ignorance about the complaint.

Finally, Defendant argues that the Court should not condition set aside upon the payment of Plaintiffs' attorney's fees because of Plaintiffs' actions.

## DISCUSSION

### I.   Setting Aside the Entry of Default

Motions to set aside entries of default pursuant to Federal Rule of Civil Procedure 55© are liberally construed in favor of the moving party.  See Mendoza v. Wight Vineyard Mgmt., 783 F.2d 941, 945-46 (9th Cir. 1986) ("Where timely relief is sought from a default . . . and the movant has a meritorious defense, doubt, if any, should be resolved in favor of the motion to set aside the [default] so that cases may be decided on their merits." (citation and internal quotation marks omitted) (alterations in original)).

A court may set aside an entry of default for "good cause shown[,]" Fed. R. Civ. P. 55©, and has broad discretion in deciding whether set aside is warranted.  See Brady v. United States, 211 F.3d 499, 504 (9th Cir. 2000).  There are three factors that courts consider in determining whether good cause exists to set aside an entry of default: 1) whether the moving party engaged in culpable conduct that led to the default; 2) whether the moving party has a meritorious defense; or 3) whether

setting aside the entry of default will prejudice the non-moving party.  See Franchise Holding II, LLC v. Huntington Rests. Group, Inc., 375 F.3d 922, 925-26 (9th Cir. 2004).  Insofar as these factors are disjunctive, a court may deny a motion to set aside an entry of default if any one of these factors supports denial.  The moving party bears the burden of establishing that these factors favor setting aside the entry of default.  See id. at 926.

### A.   **Prejudice**

Plaintiffs do not argue that they will be prejudiced if the Court sets aside the entry of default.

### B.   **Meritorious Defense**

In order to establish a meritorious defense for purposes of Rule 55©, the defendant must allege specific facts constituting a defense.  See Franchise Holding II, 375 F.3d at 926.  The Ninth Circuit has stated that this burden "is not extraordinarily heavy."  TCI Group Life Ins., 244 F.3d at 700 (citation omitted).  The defendant, however, cannot make a "mere general denial without facts to support it".  Franchise Holding II, 375 F.3d at 926 (citation and quotation marks omitted).

Defendant's Motion includes copies of Plaintiffs' Federal Truth-in-Lending Disclosure Statement ("TILA Disclosure"), Notice of Right to Cancel, and Adjustable Rate Mortgage Loan Program Disclosure ("Rate Disclosure").  [Exhs. 5-7

to Motion.]  Plaintiffs signed each document on September 15, 2006.  Each document contains a statement that, by their signature, they acknowledge receiving a copy of the document. The TILA Disclosure clearly states that the average annual percentage rate is 8.083%, and it provides the number of monthly payments at each amount.  The vast majority of the payments are $3,673.21.  [Exh. 5 to Motion.]  The following statement appears at the top of the first page of the Rate Disclosure:

ADJUSTABLE RATE MORTGAGE LOAN PROGRAM DISCLOSURE
1 MONTH INITIAL INTEREST RATE PERIOD
12 MONTH TREASURY AVERAGE
POTENTIAL NEGATIVE AMORTIZATION

[Exh. 7 to Motion.]  Through these documents, Defendant has alleged specific facts which establish a potentially meritorious defense to Plaintiffs' allegations that they were not provided with copies of their loan documents at closing and that they were promised a 1.00% fixed rate for five years.  As to Plaintiffs' claim that Defendant should not have made a loan to Plaintiffs with terms that were less favorable than their First Hawaiian Bank mortgage, Defendant argues that as a matter of law, it was not in a fiduciary relationship with Plaintiffs and was not required to assess whether its loan would leave Plaintiffs in a better or worse position.  Finally, with regard to Plaintiffs' allegation that unlicensed mortgage brokers participated in the transaction, Defendant argues that, under state law, the participation of an unlicensed mortgage broker does not void the

transaction.[2]

This Court therefore finds that Defendant has presented factual and legal arguments that constitute potentially meritorious defenses to Plaintiffs' claims.  The Court emphasizes that the meritorious defense standard in the context of Rule 55©) is relatively low and that the Court's finding has no effect upon any dispositive motions the parties may bring later in the case. Further, the Court makes no finding as to the credibility of the evidence that Defendant presented.

### C.   **Culpable Conduct**

A defendant's failure to answer is culpable "if he has received actual or constructive notice of the filing of the action and *intentionally* failed to answer."  TCI Group Life Ins. Plan v. Knoebber, 244 F.3d 691, 697 (9th Cir. 2001) (citations and quotation marks omitted) (emphasis in original).  An intentional failure to answer is one that is wilful, deliberate, or in bad faith.  See id.  Thus, "[n]eglectful failure to answer as to which the defendant offers a credible, good faith explanation negating any intention to take advantage of the opposing party, interfere with judicial decisionmaking, or otherwise manipulate the legal process is not 'intentional' . . .

---

[2] Defendant asserted in its reply that Plaintiffs retained the purportedly unlicensed mortgage brokers.  Insofar as Defendant did not submit a declaration or other evidence supporting this assertion, the Court will not consider it.

and is therefore not necessarily . . . culpable or inexcusable."
Id. at 697-98.

Defendant has tried to place much of the blame for its
failure to file a timely answer upon Plaintiffs. Plaintiffs sent
the complaint and summons to Defendant's president rather than to
its legal department; and Plaintiffs' counsel never mentioned the
filing of this action to Defendant's in-house counsel during
their initial discussions and correspondence.[3] Regardless,
Defendant's legal department received the complaint and summons
on August 16, 2007, prior to the deadline to answer the
complaint. Defendant realized that their answer would be due on
August 20, 2007, but apparently thought that no urgent action was
necessary because it incorrectly believed that Plaintiffs had not
effected proper service.[4] As a general rule, a mistake of law

---

[3] The August 6, 2007 E-mail refers to "[t]he facts alleged
in the complaint". [Exh. 3 to Motion.] According to Defendant,
because in-house counsel was not aware of the complaint in the
instant case, he thought this language referred to Plaintiffs'
July 2, 2007 letter requesting rescission of the loan. The Court
declines to address whether this was a reasonable interpretation
of the August 6 E-mail because, even assuming, *arguendo*, that in-
house counsel should have interpreted the August 6 E-mail to mean
that Plaintiffs had filed a civil complaint, there is no
indication that the misinterpretation was wilful, deliberate, or
in bad faith.

[4] Pursuant to Federal Rule of Civil Procedure 4(e)(1) and
(h)(1) Plaintiffs could serve Defendant pursuant to the law
governing service upon a defendant in actions filed in Hawai`i
state courts. Hawai`i law allows for the service of legal
entities located outside of Hawai`i via registered or certified
mail, return receipt requested. See, e.g., Haw. Rev. Stat. §
(continued...)

does not constitute excusable neglect.  See, e.g., Speiser,
Krause & Madole P.C. v. Ortiz, 271 F.3d 884, 886 (9th Cir. 2001).
Further, based on its belief that service was improper, Defendant
could have filed a motion to dismiss pursuant to Federal Rule of
Civil Procedure 12(b)(5).  If Defendant did not have sufficient
time to file such a motion before the deadline to answer the
complaint, it could have either asked Plaintiffs to stipulate to
an extension or sought an extension from the Court.  This Court
therefore finds that Defendant's neglect caused its failure to
answer the complaint.  The Court must now determine whether
Defendant has offered "a credible, good faith explanation
negating any intention to take advantage of the opposing party,
interfere with judicial decisionmaking, or otherwise manipulate
the legal process[.]"  See TCI Group Life Ins., 244 F.3d at 697.

        Defendant is not a Hawai`i entity and its legal
department is located in California.  As a legal entity, it
cannot represent itself pro se.  See, e.g., Local Rule LR83.6(b).
Defendant's in-house counsel who had been working with
Plaintiffs' counsel, who presumably is licensed to practice in
California but not in Hawai`i, could not appear in this district
without being admitted to practice pro hac vice.  A pro hac vice
application requires the association of local counsel.  See Local

─────────────────

        [4](...continued)
414-64(b) (regarding corporations).

                            14

Rule LR83.1(e).  Defendant thus could not file any documents in
this case without retaining Hawai`i counsel.  Defendant's Motion
states that they promptly sought Hawai`i counsel after the legal
department received the complaint.  The Court finds that
Defendant's search for Hawai`i counsel, as well as Defendant's
attempts to work with Plaintiffs' counsel to try resolve the
dispute without litigation, indicate that it did not intend to
take advantage of Plaintiffs or interfere with the legal process
for purposes of delay or unfair advantage in the litigation.
This Court therefore finds that Defendant's failure to timely
answer the complaint was not culpable.

        Defendant have established that: 1) its conduct was not
culpable; 2) it has potentially meritorious defenses to
Plaintiffs' claims; and 3) Plaintiffs will not be prejudiced if
the Court sets aside the entry of default.  Further, Defendant
filed the Motion less than three weeks after the entry of
default.  This Court therefore finds that there is good cause to
set aside the entry of default and GRANTS Defendant's Motion.

**II.  <u>Sanctions</u>**

        Plaintiffs argue that this Court should condition
setting aside the entry of default upon the payment of the
reasonable attorney's fees they incurred in connection with the
default.  The Ninth Circuit has held that "it is appropriate to
condition setting aside a default upon the payment of a

15

sanction." <u>Nilsson Robbins, Dalgarn, Berliner, Carson & Wurst v. Louisiana Hydrolec</u>, 854 F.2d 1538, 1546-47 (9th Cir. 1988) (per curiam).  By doing so, a court can rectify any prejudice that the non-defaulting party suffers as a result of the reopening of the litigation.  <u>See id.</u> at 1546 (citing 10 C. Wright, A. Miller & M. Kane, Federal Practice & Procedure § 2700, at 538 (1983)).  The most common type of prejudice suffered by the non-defaulting party is the additional expense incurred because of "the delay, the hearing on the Rule 55© motion, and the introduction of new issues."  <u>Id.</u>  The requirement that the defaulting party pay court costs can ameliorate these burdens and such a sanction "can serve to 'promote the positive purposes of the default procedures without subjecting either litigant to their drastic consequences.'"  <u>Id.</u> (quoting 10 Wright, Miller & Kane, <u>supra</u>, § 2700, at 539).

Although it does not rise to the level sufficient to deny the Motion, the entry of default and the instant Motion has prejudiced Plaintiffs by delaying this case.  Further, while Plaintiffs' actions contributed to the delay in Defendant's legal department receiving the complaint, the ultimate responsibility for the failure to file a timely answer lies with Defendant. Defendant's procedures to ensure that all pleadings are promptly forwarded to the legal department failed in this case and Defendant relied upon a erroneous legal advice that service was

16

not proper.  Although Defendant's actions do not rise to the
level of culpable conduct warranting denial of the Motion, the
Court finds that Defendant's actions warrant the imposition of
sanctions associated with the entry of default.

The Court notes that Defendant asked Plaintiffs to
stipulate to setting aside the entry of default.  Arguably, if
Plaintiffs had agreed to the stipulation, it would have minimized
the delay caused by the entry of default.  The Court, however,
finds that this does not affect Plaintiffs' entitlement to
reasonable attorney's fees.  Plaintiffs had plausible, albeit
ultimately unsuccessful, arguments why the entry of default
should not be set aside.  It was not unreasonable for Plaintiffs
to require Defendant to file a motion to set aside the entry of
default in order to prove its entitlement to relief.

The Court therefore GRANTS Plaintiffs' request to
condition the set aside of the entry of default upon Defendant's
payment of Plaintiffs' reasonable attorney's fees associated with
the default.  The Court ORDERS Defendant to pay Plaintiffs'
reasonable attorney's fees incurred in: 1) obtaining the entry of
default; 2) opposing the instant Motion; and 3) appearing at the
hearing on the Motion.

<u>**CONCLUSION**</u>

On the basis of the foregoing, Defendant's Motion for
Relief from the Entry of Default Filed August 21, 2007, filed

17

September 7, 2007, is HEREBY GRANTED.  Defendant shall file its

answer, in the form attached to the Motion, by no later than

**November 9, 2007.**

          The Court also GRANTS Plaintiffs' request to condition

the set aside upon Defendant's payment of Plaintiffs' reasonable

attorney's fees associated with the default.  Plaintiffs shall

file a declaration, with supporting documentation, establishing

their reasonable attorney's fees for the items identified in this

order by no later than **November 9, 2007.**  Defendant may file an

opposition to the amount of such fees by no later than

**November 23, 2007.**  The Court will take the matter under

advisement and issue an order thereafter.

          IT IS SO ORDERED.

          DATED AT HONOLULU, HAWAI`I, October 24, 2007.



                              /S/ Leslie E. Kobayashi
                              Leslie E. Kobayashi
                              United States Magistrate Judge


**GERALDINE KAJITANI, ET AL. V. DOWNEY SAVINGS & LOAN ASSOCIATION;**
**CIVIL NO. 07-00398 SOM-LEK; ORDER GRANTING DEFENDANT'S MOTION FOR**
**RELIEF FROM THE ENTRY OF DEFAULT FILED AUGUST 21, 2007**