IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

GERALDINE I. KAJITANI,           )   CIVIL NO. 07-00398 SOM/LEK
individually and as a trustee    )
of the GERALDINE I. KAJITANI     )
REVOCABLE TRUST, and ARNOLD      )
K. KAJITANI, individually as     )
as trustee of the ARNOLD K.      )
KAJITANI REVOCABLE TRUST,        )
                                 )
                Plaintiffs,      )
                                 )
        vs.                      )   ORDER GRANTING IN PART AND
                                 )   DENYING IN PART DEFENDANT'S
DOWNEY SAVINGS AND LOAN          )   MOTION FOR SUMMARY JUDGMENT
ASSOCIATION, F.A.,               )
                                 )
                Defendant.       )
_____  )
                                 )
DOWNEY SAVINGS AND LOAN          )
ASSOCIATION, F.A.,               )
                                 )
        Third-Party Plaintiff,   )
                                 )
        vs.                      )
                                 )
DANA CAPITAL GROUP, INC.,        )
MATTHEW GREEN, and MARK          )
ATALLA,                          )
                                 )
        Third-Party Defendants.  )
_____  )

ORDER GRANTING IN PART AND DENYING IN PART
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

I.       INTRODUCTION.

        In 2006, Plaintiffs Geraldine and Arnold Kajitani (the

"Kajitanis") refinanced their fixed-rate mortgage, obtaining an

adjustable-rate mortgage with Defendant Downey Savings and Loan

Association, F.A. ("Downey").  The Kajitanis now sue Downey,

alleging violations of the Truth in Lending Act, 15 U.S.C. § 1601
et seq. ("TILA"), chapter 480 of the Hawaii Revised Statutes, and
common law fraud.  The Kajitanis seek both damages and injunctive
relief.

Downey moves for summary judgment, arguing that the
Kajitanis have failed to produce sufficient evidence to survive
summary judgment on their TILA claims.  This court disagrees with
Downey on this point.  Downey also argues that the state law
claims are preempted by federal law.  The court agrees that state
law claims based on actions governed by TILA or Regulation Z are
preempted.  The Kajitanis' other state law claims are not
preempted.

II.      LEGAL STANDARD.

The court reviews the motions under the Federal Rules
of Civil Procedure as amended effective December 1, 2007.  As the
amendments to the rules in issue here were stylistic only, the
court relies on authorities construing the previous version of
the applicable rules.

Rule 56(c) of the Federal Rules of Civil Procedure
provides that summary judgment shall be granted when "the
pleadings, the discovery and disclosure materials on file, and
any affidavits show that there is no genuine issue as to any
material fact and that the movant is entitled to judgment as a
matter of law."  Fed. R. Civ. P. 56(c); see also Addisu v. Fred

2

Meyer, Inc., 198 F.3d 1130, 1134 (9th Cir. 2000).  Summary

judgment must be granted against a party that fails to

demonstrate facts to establish an essential element at trial.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  The burden

initially falls upon the moving party to identify for the court

those "portions of the materials on file that it believes

demonstrate the absence of any genuine issue of material fact."

T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d

626, 630 (9th Cir. 1987) (citing Celotex Corp., 477 U.S. at 323).

    "When the moving party has carried its burden under

Rule 56(c), its opponent must do more than simply show that there

is some metaphysical doubt as to the material facts."  Matsushita

Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986)

(footnote omitted).  The nonmoving party may not rely on the mere

allegations in the pleadings and instead must "set forth specific

facts showing that there is a genuine issue for trial."  Porter

v. Cal. Dep't of Corr., 419 F.3d 885, 891 (9th Cir. 2005)

(quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256

(1986)).

    "A genuine dispute arises if the evidence is such that

a reasonable jury could return a verdict for the nonmoving

party."  California v. Campbell, 319 F.3d 1161, 1166 (9th Cir.

2003); accord Addisu, 198 F.3d at 1134 ("There must be enough

doubt for a 'reasonable trier of fact' to find for plaintiffs in

order to defeat the summary judgment motion."). "A scintilla of evidence or evidence that is merely colorable or not significantly probative [does not] present a genuine issue of material fact." Addisu, 198 F.3d at 1134 (citation omitted). "[I]f the factual context makes the non-moving party's claim implausible, that party must come forward with more persuasive evidence than would otherwise be necessary to show that there is a genuine issue for trial." Cal. Arch'l Bldg. Prods., Inc. v. Franciscan Ceramics, Inc., 818 F.2d 1466, 1468 (9th Cir. 1987) (citing Matsushita Elec. Indus. Co., 475 U.S. at 587).

III.     FACTUAL BACKGROUND.

Downey is a federally chartered savings and loan association with its principal place of business in California. Order Granting Defendant's Motion for Relief From the Entry of Default (Oct. 25, 2007) ("Default Order") at 2 n.1.

In 2006, the Kajitanis had a 5.25% fixed-rate mortgage loan from First Hawaiian Bank. Declaration of Geraldine I. Kajitani (April 24, 2008) ("Geraldine Decl.") ¶ 2. The Kajitanis claim that Mark Atalla, acting on behalf of Downey, contacted them about refinancing their mortgage. Id. ¶¶ 2, 4. According to the Kajitanis, Atalla promised them a 1.0% interest rate for five years. Downey also allegedly promised the Kajitanis that there would be no prepayment penalty on the loan. Id. ¶ 6.

On or about September 15, 2006,[1] the Kajitanis met with Atalla at the Outrigger Resort Hotel in Waikiki to sign the documents and to close the loan.  Id. ¶¶ 9-11; see also Declaration of Lowana E. Richardson (April 25, 2008) ("Richardson Decl.") ¶ 4.  Lowana Richardson, a notary public commissioned by the State of Hawaii, had been contacted by the Kajitanis to notarize the documents for the closing.  Richardson Decl. ¶¶ 2, 4.

Richardson says that it was usually the lender, title company, or escrow company that contacted her to notarize signatures on loan documents.  According to Richardson, to ensure that there were two sets of documents at a closing, lenders or others normally instructed her to print out two sets of the loan documents beforehand or physically provided her with two sets of loan documents at the closing.  Id. ¶ 3.  At the Kajitani closing, however, Richardson did not have any of the loan documents.  Richardson says that Atalla had only one set of loan documents at the closing.  Id. ¶ 5.

At the closing, the Kajitanis signed a TILA Disclosure Statement ("Disclosure Statement"), which stated that the annual percentage rate was 8.083%.  Ex. B (attached to Plaintiff's Memorandum in Response to Defendant's Motion for Summary Judgment

---

[1]  The declaration of Geraldine Kajitani incorrectly notes the date of closing as September 15, 2008.

(April 20, 2008) ("Opp'n")).  The Disclosure Statement contained
a clause that read, "The undersigned acknowledge receiving and
reading a completed copy of the disclosure."  The Kajitanis dated
their signatures as of September 15, 2006.

The Kajitanis also signed an Adjustable Rate Mortgage
Loan Program Disclosure ("ARM Disclosure"), which explained the
difference between an adjustable-rate mortgage ("ARM") and a
fixed-rate mortgage.  Ex. C (attached to Defendant's Concise
Statement of Material Facts (April 16, 2008)).  The ARM
Disclosure contained an acknowledgment of receipt that stated,
"You hereby acknowledge receipt of a copy of this disclosure and
the Consumer Handbook on Adjustable Rate Mortgages.  Date
09/14/2006."  Following their signatures, the Kajitanis handwrote
the date of September 15, 2006.

Lastly, the Notice of Right to Cancel ("Notice") was
signed by the Kajitanis on the date of closing.  Ex. C (attached
to Opp'n).  The Notice similarly contained an acknowledgment of
receipt: "I/We each acknowledge the receipt of two completely
filled in copies of this NOTICE OF RIGHT TO CANCEL, and one copy
of the Federal Truth-In-Lending Act Disclosure Statement."  The
Kajitanis' signatures were dated September 15, 2006.

The Kajitanis say that, after signing all the papers,
they left the hotel without any of the closing documents.  Atalla
allegedly took all the papers and told the Kajitanis that they

would receive copies in the mail.  Geraldine Decl. ¶¶ 11-12.
Richardson says, "To the best of my recollection, the Kajitanis
did not receive a set of the documents to take with them; Mr.
Atalla kept the documents with him and told the Kajitanis that he
would send them a copy."  Richardson Decl. ¶ 6.

    The Kajitanis say that they had received "several other
notices of right to cancel" and a TILA Disclosure Statement
before the closing, but that those were different from what they
received in the mail a week or two after the closing.  Geraldine
Decl. ¶¶ 12, 13.  One of the earlier notices of right to cancel
had a signing date of August 11, 2006, and stated that the
cancellation deadline was August 15, 2006.  See Ex. H (attached
to Opp'n).  In addition, the earlier TILA Disclosure Statement
represented the annual percentage rate as 7.985%.  See id.  The
Kajitanis say these documents confused them.  Geraldine Decl.
¶ 13.

    The closing documents that came later in the mail
conflicted with what the Kajitanis say Atalla promised them.
According to the closing documents, their loan had an interest
rate higher than 1.0%, they had been charged a notary fee of
$300.00, there was a yield-spread premium of $14,787.50, and
their loan had a prepayment penalty.  Id. ¶ 15.  The 1.0%
interest rate was a one-month teaser rate, and the mortgage was

an ARM, with rates ranging from 7.98% to 10.95% and an 8.083%
average rate.  Default Order at 2.

On July 2, 2007, the Kajitanis sent a letter to Downey,
requesting rescission of their loan based on Downey's alleged
violations of TILA and Haw. Rev. Stat. § 480-2.  Ex. I (attached
to Opp'n).  On July 23, 2007, Downey sent the Kajitanis a letter
requesting further evidence that Downey had violated TILA.  Ex. G
(attached to Opp'n).

On July 26, 2007, the Kajitanis filed the Complaint in
this action, alleging violations of TILA as well as Hawaii
statutory and common law.  Downey moves for summary judgment on
all claims against it, arguing that the Kajitanis fail to present
sufficient evidence to sustain a TILA claim and that the state
claims are preempted.  The court grants in part and denies in
part Downey's motion.

IV.      ANALYSIS.

A.   TILA Claims.

Downey moves for summary judgment on all of the
Kajitanis' claims, arguing that each of the claims rests on the
allegation that the Kajitanis "received no documents at all" at
the closing of the loan, and that the Kajitanis have failed to
rebut the presumption of delivery created by their signed
acknowledgments of receipt.  Motion at 9.  Claiming that his
declaration is both procedurally and substantively improper,

8

Downey also moves to exclude the declaration of the Kajitanis'
"purported expert," Charles Wheeler.  Defendant Downey Savings
and Loan Association, F.A.'s Reply Memorandum in Support of Its
Motion for Summary Judgment (May 8, 2008) ("Reply") at 7.

Because the court concludes that there is a genuine
issue of material fact regarding the receipt of documents at the
closing, the court denies Downey's motion for summary judgment as
to Count One.

1.    The Complaint Does Not Rest Entirely on the
Alleged Nonreceipt of Documents At Closing.

As an initial matter, the court disagrees with Downey's
characterization of the Kajitanis' claims as resting entirely on
the allegation that they received no documents at all.  Count One
of the Complaint alleges violations of TILA based on a failure to
properly disclose, or on a misleading and confusing disclosure
of: (1) the annual percentage rate, (2) the finance charge,
(3) the amount financed, (4) the total payments and the payment
schedule, (5) the security interest, and (6) the notice of right
to rescind.  Complaint ¶ 27.  Thus, the Kajitanis appear to be
alleging both the nonreceipt of required disclosures, as well as
misrepresentations about certain terms of their refinancing.  As
Magistrate Judge Leslie Kobayashi recognized in prior
proceedings, the Kajitanis are alleging not just nonreceipt of
documents, but also misstatements about the interest rate, as
well as a dual agency by certain mortgage brokers and a lack of

9

licensing by some of the mortgage brokers.  Default Order at 2.
At the hearing on the present motion, the Kajitanis confirmed
that a claim of dual agency is indeed among their claims.  The
Kajitanis say that "Defendant incorrectly states that the TILA
claims herein are limited to the failure to give the Notice of
Right to Cancel."  Opp'n at 8.

Because the Complaint does not rest entirely on the
allegation that the Kajitanis failed to receive documents, Downey
could not obtain summary judgment on all claims against it even
if the court found that the Kajitanis had received their loan
documents at closing.

Nor is Downey entitled to a favorable ruling on any
claim under TILA that the notary fee was unreasonable.  See Reply
at 13.  It is not clear that such a claim is actually raised in
the Complaint.  The Complaint does not expressly refer to the
notary fee, although the Kajitanis could still refer to the
notary fee as evidence of fraud, rather than as a separate TILA
violation.  If not a claim, the notary fee issue requires no
ruling at this time.  Even if a notary fee claim could be said to
have been properly asserted in the Complaint, the record before
the court is insufficient to allow a decision on this issue, as
the parties have not submitted briefing or evidence on what a
reasonable notary fee would have been.

    2.    There Is A Genuine Issue of Fact as To
          Whether the Kajitanis Received The Required
          <u>Documents at Closing.</u>

TILA was passed "to assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit, and to protect the consumer against inaccurate and unfair credit billing and credit card practices." 15 U.S.C. § 1601(a). Accordingly, TILA requires creditors to disclose in a clear and conspicuous manner certain key terms and costs in credit transactions. <u>See</u> <u>id.</u> §§ 1631, 1632, 1635, 1638.

In keeping with TILA's purpose of protecting consumers, the Ninth Circuit has held that "[e]ven technical or minor violations . . . impose liability on the creditor." <u>Jackson v. Grant</u>, 890 F.2d 118, 120 (9th Cir. 1989) (citations omitted); <u>Semar v. Platte Valley Federal Savings & Loan Association</u>, 791 F.2d 699, 704 (9th Cir. 1986) (same); <u>Riopta v. Amresco Residential Mortgage Corporation</u>, 101 F. Supp. 2d 1326, 1333 (D. Haw. 1999) ("TILA requires exact adherence and minor or technical violations, no matter how inadvertent, automatically allow obligors to invoke various remedies."). Thus, for example, a creditor's failure to deliver the required disclosure notices in a timely manner or in the proper form extends the borrower's rescission period from three days to three years. <u>See</u> 15 U.S.C. § 1635; 12 C.F.R. § 226.23.

TILA provides that a borrower's acknowledgment of receipt of the required disclosures only creates a rebuttable presumption of delivery: "Notwithstanding any rule of evidence, written acknowledgment of receipt of any disclosures required under this subchapter by a person to whom information, forms, and a statement is required to be given pursuant to this section does no more than create a rebuttable presumption of delivery thereof."  15 U.S.C. § 1635(c).

The court has not found, and the parties do not point to, any controlling cases that set forth how a borrower rebuts the presumption of delivery.  Instead, Downey, citing to cases from other jurisdictions, argues that the Kajitanis' "mere denial of receipt is insufficient to rebut the presumption of delivery under TILA."  Motion at 13.

Even if this court were to agree that mere denial is insufficient, the Kajitanis have clearly presented more than their denials of receipt to rebut the presumption here.  In addition to their own declarations, the Kajitanis have submitted the declaration of a third-party witness who corroborates the Kajitanis' assertions.  See Richardson Decl. ¶ 6.  Not only does Richardson have no recollection of the Kajitanis' receipt of any of the closing documents, she states that Atalla had only one set of documents, which he kept with him.  Id. ¶¶ 5-6.  Richardson further describes the steps that creditors usually take to ensure

12

that there will be two sets of loan documents at the closing, and she notes that Downey did not follow these steps for the Kajitani closing.  Id. ¶¶ 3-4.

In arguing that the Kajitanis do not rebut the presumption of delivery, Downey relies on cases in which only the borrowers, and not a third-party witness, did not remember receiving the notices.  Reply at 12.  The case before this court is clearly distinguishable from such cases.  Richardson's statement corroborates the Kajitanis' affirmative statements that they did not receive the required disclosures, and Richardson's comparison of the Kajitani closing with other closings casts further doubt on Downey's claim that the Kajitanis received the required disclosures.

Similarly distinguishable are Sibby v. Ownit Mortgage Solutions, Inc., 240 Fed. Appx. 713 (6th Cir. 2007), and Oscar v. Bank One, N.A., 2006 WL 401853 (E.D. Pa. Feb. 17, 2006), on which Downey relies.  In those cases, the courts upheld the presumption of delivery based on evidence of delivery that went beyond signed acknowledgments of receipt.

In Sibby, the district court granted summary judgment for the defendants after concluding that the borrower had failed to rebut the presumption of delivery created by the borrower's acknowledgment of receipt.  In granting summary judgment to the defendants, the district court relied not only on the borrower's

13

signed acknowledgment, but also on an affidavit of a closing agent and on what the court deemed to be the borrower's admission that she had received the two required copies of the notice of right to cancel.  <u>Sibby</u>, 240 Fed. Appx. at 716.  The Sixth Circuit affirmed the district court's grant of summary judgment, concluding that the borrower's deposition testimony that she received only one copy of the notice of right to cancel was insufficient to rebut the presumption of delivery.

In <u>Oscar</u>, the United States District Court for the Eastern District of Pennsylvania granted summary judgment for the defendant on the borrowers' claim that they had not received the required disclosures.  In addition to the borrowers' signed acknowledgments that they had indeed received the required disclosures on the date of closing, there was also evidence that the defendants had sent them a letter with the required disclosures prior to the closing date.  2006 WL 401853 at *3.  The court concluded that one borrower's affidavit, claiming that he had never received the disclosures, was insufficient to rebut the presumption that the borrowers had indeed received the required disclosures.

Downey's reliance on other cases is also misplaced.  In <u>McCarthy v. Option One Mortgage Corporation</u>, 362 F.3d 1008 (7th Cir. 2004), the court considered a claim under the Parity Act, 12 U.S.C. §§ 3801 <u>et seq.</u>, which contains a requirement that a

14

housing creditor provide certain disclosures to its borrowers.
Id. at 1011.  Under the Parity Act, the housing creditor is only
required to "substantially comply" with the disclosure
requirements and need not prove that the borrower actually
received the disclosures.  In contrast, "TILA embodies a strict
liability approach that ignores intent and focuses solely on
whether any statutory requirement was violated."  Riopta, 101 F.
Supp. 2d at 1333.  The McCarthy court concluded that "evidence of
regular office procedures and customary practices of a sender
gives rise to a presumption of delivery" under the Parity Act,
and that a mere denial of receipt by the plaintiff is
insufficient to rebut the presumption.  McCarthy, 362 F. 3d at
1012.  Even if this standard applied to TILA cases, this court
has more than a mere denial by the Kajitanis.

        Nor is this court persuaded by Williams v. First
Government Mortgage & Investors Corporation, 225 F.3d 738 (D.C.
Cir. 2000), also cited by Downey.  The borrower in Williams had
gone to trial in the district court and was found not to have
been credible, given prior inconsistent testimony.  Id. at 751.
The D.C. Circuit affirmed the district court's ruling that the
borrower had failed to rebut the presumption of delivery.  No
equivalent credibility finding is in issue on the present motion.

        Thus, none of the cases Downey relies on actually holds
that documents must be presumed to have been delivered in

15

circumstances such as those before this court.  The Ninth Circuit has certainly not so held.  This court concludes that the Kajitanis' declarations, coupled with Richardson's declaration, create a genuine issue of fact as to whether the Kajitanis received their closing documents.  Accordingly, summary judgment is denied on this claim.

The court does not rely on Wheeler's declaration in reaching its conclusion.  The Kajitanis failed to comply with the court's Scheduling Order, which required disclosure of expert witnesses by March 17, 2008.  Rule 16 Scheduling Order (Oct. 17, 2007) ¶ 11.  If the Kajitanis had good cause to have that deadline extended, they should have presented that to the Magistrate Judge in a motion to amend the Scheduling Order.  They were not allowed to ignore deadlines based on their unilateral determination that an amendment was justified.  Wheeler's declaration therefore plays no part in the present ruling. Whether Wheeler may testify at trial is a subject the court leaves for further consideration on future motions.

The court denies Downey's motion for summary judgment as to Count One of the Complaint.

B.   Federal Preemption.

Count Two of the Complaint alleges that Downey violated chapter 480 of the Hawaii Revised Statutes by (1) violating TILA; (2) making promises as to the interest rate, the charges, and the

16

terms of the refinancing and disclosing loan charges; (3) giving the Kajitanis an improper Notice of Right to Cancel; and (4) refusing to honor the Kajitanis' rescission request. Complaint ¶¶ 31-34.   Count Three alleges common law fraud in the form of Downey's alleged false representations, both oral and in writing, regarding the terms of the Kajitanis' refinancing. Downey moves for summary judgment on these claims, arguing that they are preempted by federal law.

There are three circumstances in which state law is preempted under the Supremacy Clause, U.S. Const. art. VI, cl. 2: (1) express preemption, when Congress explicitly defines the extent to which its enactments preempt state law; (2) field preemption, when state law attempts to regulate conduct in a field that Congress intended the federal law to occupy exclusively; and (3) conflict preemption, when it is impossible to comply with both state and federal requirements, or when state law stands as an obstacle to the accomplishment and execution of the full purpose and objectives of Congress.  <u>Bank of America v. City & County of San Francisco</u>, 309 F.3d 551, 558 (9th Cir. 2002); <u>Industrial Truck Ass'n, Inc. v. Henry</u>, 125 F.3d 1305, 1309 (9th Cir.1997).

The Ninth Circuit has applied field preemption analysis to state claims related to alleged TILA violations.  In <u>Silvas v. E*Trade Mortgage Corp.</u>, 514 F.3d 1001, 1004 (9th Cir. 2008), the

17

court recognized that Congress has occupied the field of banking
since the days of <u>McCulloch v. Maryland</u>, 17 U.S. 316 (1819).  <u>Id.</u>
The Ninth Circuit noted:

> Congress enacted the Home Owners' Loan Act of
> 1933 ("HOLA") to charter savings associations
> under federal law, at a time when record
> numbers of home loans were in default and a
> staggering number of state-chartered savings
> associations were insolvent.  HOLA was
> designed to restore public confidence by
> creating a nationwide system of federal
> savings and loan associations to be centrally
> regulated according to nationwide "best
> practices."

<u>Id.</u> (citing <u>Bank of America</u>, 309 F.3d at 558-59).

Under HOLA, Congress delegated "broad authority" to the
Office of Thrift Supervision ("OTS") to issue regulations
governing savings and loan associations.  12 U.S.C. § 1464; <u>see
also</u> <u>Silvas</u>, 514 F.23d at 1005; <u>Bank of America</u>, 309 F.3d at 559.
Pursuant to its authority, OTS has promulgated a preemption
regulation:

> OTS hereby occupies the entire field of
> lending regulation for federal savings
> associations.  OTS intends to give federal
> savings associations maximum flexibility to
> exercise their lending powers in accordance
> with a uniform federal scheme of regulation.
> Accordingly, federal savings associations may
> extend credit as authorized under federal
> law, including this part, without regard to
> state laws purporting to regulate or
> otherwise affect their credit activities,
> except to the extent provided in paragraph
> (c) . . . .

12 C.F.R. § 560.2(a).

In paragraph (b), OTS provides a list of examples of preempted state laws.  The list includes "state laws purporting to impose requirements regarding":

> (4) The terms of credit, including amortization of loans and the deferral and capitalization of interest and adjustments to the interest rate, balance, payments due, or term to maturity of the loan, including the circumstances under which a loan may be called due and payable upon the passage of time or a specified event external to the loan;
>
> . . . .
>
> (5) Loan-related fees, including without limitation, initial charges, late charges, prepayment penalties, servicing fees, and overlimit fees;
>
> . . . .
>
> (9) Disclosure and advertising, including laws requiring specific statements, information, or other content to be included in credit applications forms, credit solicitations, billing statements, credit contracts, or other credit-related documents and laws requiring creditors to supply copies of credit reports to borrowers or applicants[.]"

Id. §§ 560.2(b)(4), (5), (9).

Paragraph (c) describes state laws that are not preempted, clarifying that state laws that "only incidentally affect the lending operations of Federal savings associations" are not preempted and listing as examples contract, commercial, and tort law.  Id. § 560.2(c).

19

In addition to promulgating regulations, OTS has described a process for determining when a state law is preempted:

> When analyzing the status of state laws under § 560.2, the first step will be to determine whether the type of law in question is listed in paragraph (b).  If so, the analysis will end there; the law is preempted.  If the law is not covered by paragraph (b), the next question is whether the law affects lending. If it does, then, in accordance with paragraph (a), the presumption arises that the law is preempted.  This presumption can be reversed only if the law can clearly be shown to fit within the confines of paragraph (c).  For these purposes, paragraph (c) is intended to be interpreted narrowly.  Any doubt should be resolved in favor of preemption.

OTS, Final Rule, 61 Fed. Reg. 50951, 50966-67 (Sept. 30, 1996).

Although commentators urged deletion of paragraph (c), OTS opted to retain it because "it does not intend to preempt basic state laws such as state uniform commercial codes and state laws governing real property, contracts, torts, and crimes." Thus, state laws covered in paragraph (c) "are not preempted to the extent that they either: (i) Have only an incidental impact on lending; or (ii) are otherwise not contrary to the purposes expressed in paragraph (a) of the regulation." Id. at 50966.

Against this backdrop, the Ninth Circuit in Silvas concluded that the plaintiffs' state claims were preempted because the subject matter of the claims was specifically listed in paragraph (b) of section 560.2.  The plaintiffs were borrowers

who filed a class action suit claiming that the lender had violated TILA by refusing to refund lock-in fees after the borrowers had exercised their rights of rescission. Silvas v. E*Trade Mortgage Corp., 421 F. Supp. 2d 1315, 1317 (S.D. Cal. 2006). Instead of bringing their claims under TILA, the borrowers asserted two causes of action under California's Unfair Competition Law ("UCL"), presumably because the statute of limitations for their TILA claims had already run. Id. at 1320. The borrowers alleged that (1) the lender's advertisement on its website stating that the lender did not refund lock-in fees violated the UCL's prohibition against false advertising; and (2) the lender's misrepresentation of consumers' legal rights on its advertising and disclosure documents was an unlawful practice under the UCL. Id. at 1317.

The district court noted that "alleged TILA violations serve as the predicate acts supporting . . . Plaintiffs' UCL causes of action." Id. The district court concluded that the plaintiffs' claims were preempted because the UCL claims "attack Defendant's lending practices in two categories where OTS has explicitly indicated federal law occupies the field: (1) disclosure and advertising and (2) loan-related fees." Id. at 1319 (citing 12 C.F.R. § 560.2(b)(5), (9)).

The Ninth Circuit affirmed, agreeing that the UCL claims were based entirely on "disclosure and advertising" and

unlawful fees, which OTS explicitly preempted in section
560.2(b).  <u>Silvas</u>, 514 F.3d at 1006; <u>see also</u> <u>id.</u> ("Because [the
first] claim is entirely based on E*TRADE's <u>disclosures and</u>
<u>advertising</u>, it falls within the specific type of law listed in
§ 560.2(b)(9). . . . [The second] claim . . . fits within
§ 560.2(b)(9) because the alleged misrepresentaion is contained
in <u>advertising and disclosure documents</u>.") (second emphasis
added).  Because the claims fell under section 560.2(b), the
Ninth Circuit did not address whether the claims were based on
state laws of general applicability.

          The Ninth Circuit has not spoken on the subject of
preemption with regard to TILA claims since <u>Silvas</u>.  This court
finds guidance on the subject by the District Court of the
Central District of California.  In <u>Reyes v. Downey Savings &</u>
<u>Loan Ass'n, F.A.</u>, 2008 WL 867722 (C.D. Cal. Mar. 29, 2008), the
district court identified certain "guiding principles" concerning
when OTS regulations preempt state laws.  <u>Id.</u> at *3.  "First,
when plaintiffs rely upon state laws of specific application to
savings and loans activity, their claims are preempted."  <u>Id.</u>
(citing <u>Fidelity Federal Savings & Loan Association v. de la</u>
<u>Cuesta</u>, 458 U.S. 141 (1982); <u>Bank of America</u>, 309 F.3d 551).
"Second, when plaintiffs rely on state laws of general
application, but their claims are based on federal laws, federal
law preempts."  <u>Id.</u> at *4 (citing <u>Silvas</u>, 421 F. Supp. 2d at

1317, aff'd, 514 F.3d 1001).  Third, when plaintiffs rely on
state laws of general application that directly address the
subject matters set forth in 12 C.F.R. § 560.2(b), their claims
are preempted.  See id. (citing Boursiquot v. Citibank F.S.B.,
323 F. Supp. 2d 350, 355-56 (D. Conn. 2004)); see also Silvas,
514 F.3d at 1006.  "Finally, when plaintiffs rely on a state law
of general application, and the application of the law does not
purport to specifically regulate lending activity, the state law
is not preempted."  Id.; see also 61 Fed. Reg. at 50966; cf. In
re Ocwen Loan Servicing, LLC Mortgage Servicing Litigation, 491
F. 3d 638, 643 (7th Cir. 2007) (Judge Posner) ("Against this
background of limited [OTS] remedial authority, we read
subsection (c) to mean that OTS's assertion of plenary regulatory
authority does not deprive persons harmed by the wrongful acts of
savings and loan associations of their basic state common-law-
type remedies.").

        The district court in Reyes concluded that some of the
plaintiffs' claims were preempted, while others were not.  The
court determined that the plaintiffs' claims that the defendant
had promised a lower interest rate than was delivered and that
the defendants had misrepresented the contract terms were based
on the "principles of breach of contract and fraud in the
inducement [that] are not specific to lending activities."
Reyes, 2008 WL 867722 at *5.  Because the plaintiffs' claims were

based on "general principles of contract law," there was no preemption.  Id.  The court noted, however, that if the plaintiffs had sought to apply state law "to require certain disclosures in loan-related advertising, federal law would preempt."  The court also concluded that the plaintiffs' state law claims predicated on violations of TILA were preempted.  Id. at *6.

This court similarly concludes that some of the Kajitanis' claims are preempted, while others are not.  As set forth by OTS, the first step in the preemption analysis is to determine whether the state laws purport to impose requirements regarding one of the subject matters listed in 12 C.F.R. § 560.2(b).  In relevant part, Haw. Rev. Stat. § 480-2 provides that "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are unlawful."  Haw. Rev. Stat. § 480-2(a).  A claim of common law fraud under Hawaii law requires "(1) a representation of a material fact, (2) made for the purpose of inducing the other party to act, (3) known to be false but reasonably believed true by the other party, and (4) upon which the other party relies to [his or her] damage."  Hawaii Cmty. Fed. Credit Union v. Keka, 94 Haw. 213, 230, 11 P.3d 1, 18.  Thus, both the state statute and Hawaii common law pass the first step of the preemption analysis

because neither purports to regulate any of the subject matters listed in 12 C.F.R. § 560.2(b).

By contrast, the plaintiffs' first claim in <u>Silvas</u> was brought under section 17500 of UCL, which specifically addresses false or misleading statements in <u>advertising</u>.  <u>See</u> Cal. Bus. & Prof. Code § 17500.  The plaintiffs in <u>Silvas</u> also alleged misrepresentation in the defendant's disclosure documents, as well as an unlawful fee, subject matters listed in 12 C.F.R. § 560.2(b).  <u>Silvas</u>, 514 F.3d at 1006.  The Kajitanis' state claims are distinguishable as partly premised on oral misrepresentations regarding certain credit terms, which they allege was a "bait and switch" tactic.  The <u>Silvas</u> court specifically noted that the plaintiffs in that case alleged claims of misrepresentation in advertising and disclosure <u>documents</u>.  TILA addresses the disclosure of certain credit terms in document form and does not cover oral disclosures.  <u>See</u> e.g., 15 U.S.C. § 1604.  Further, OTS regulations describe the "disclosure and advertising" category as referring to information that is to be disclosed on documents.  12 C.F.R. § 560.2(b)(9). Federal preemption does not appear to apply to oral misrepresentations by lenders.  As Judge Posner has pointed out, "Enforcement of state law [under these circumstances] would complement rather than substitute for the federal regulatory scheme."  <u>Ocwen</u>, 491 F.3d at 644.

Proceeding to step two of the analysis set forth by OTS, this court concludes that the state laws at issue in the Complaint are laws of general applicability that have only an incidental effect on lending.  Comparing TILA and section 480-2, the Hawaii Supreme Court has noted:

> TILA and HRS § 480-2 have differing "scope and application."  TILA was intended to ensure informed credit decisions by consumers, whereas HRS § 480-2 was designed to prevent fraudulent business practices directed against consumers.  Thus, although the ultimate objective of both statutes is consumer protection, they effect their common purposes by non-coextensive means.

Keka, 94 Haw. at 229 n. 15, 11 P.3d at 17 n. 15 (quoting Riopta, 101 F. Supp. 2d at 1333); see also Riopta, 101 F. Supp. 2d at 1333 (noting that TILA and section 480-2 have differing scopes, applications, and standards).  Similarly, a claim of common law fraud involves a generally applicable law that only incidentally affects lending.  See e.g., Reyes, 2008 WL 867722 at *5.  The court therefore concludes that neither section 480-2 of the Hawaii Revised Statutes nor Hawaii common law fraud is preempted by federal law.

However, to the extent the Kajitanis' state law claims rest on TILA violations or concern subject matters explicitly preempted in 12 C.F.R. § 560.2(b), those claims are clearly preempted.  Thus, the claims in paragraphs 31, 33, and 34 of the Complaint are preempted because they are premised on alleged TILA

violations.  Paragraph 32, which concerns Downey's alleged
promises regarding interest rates, charges, and the terms of
financing, is not preempted if the Kajitanis are alleging that
Downey orally misled them about these terms.  But if the
Kajitanis are alleging that these terms were not properly
disclosed in the disclosure documents required under TILA, then
that matter is preempted as concerning "disclosure and
advertising," which falls under 12 C.F.R. § 560.2(b).  Similarly,
the Kajitanis' common law fraud claim is preempted to the extent
it alleges misrepresentations in the disclosure documents
required under TILA, but not to the extent it alleges oral
misrepresentations related to an alleged "bait and switch"
tactic.

        Accordingly, the court grants in part and denies in
part Downey's motion for summary judgment on the Kajitanis' state
law claims.  To the extent the state claims are premised on TILA
or Regulation Z violations, including Downey's alleged failure to
properly disclose certain terms in its documents as required by
TILA, those claims are preempted.  The remaining state law
claims, however, are not preempted.

V.        CONCLUSION.

        For the foregoing reasons, the court grants in part and
denies in part Downey's motion for summary judgment.  This order
leaves for further adjudication Count One and the portions of

                              27

Counts Two and Three that are not based on TILA and its regulations.



          IT IS SO ORDERED.

          DATED: Honolulu, Hawaii, May 22, 2008.




                                _/s/ Susan Oki Mollway_
                                Susan Oki Mollway
                                United States District Judge


**GERALDINE KAJITANI, ET AL. V. DOWNEY SAVINGS & LOAN ASSOCIATION**, Civ. No. 07-00398 SOM/LEK; ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT